**MARK THOMAS SOPHOCLES, LLC**
**By: Mark T. Sophocles, Esquire**
**ATTORNEY ID # 74998**
**21 Industrial Blvd., Suite 201**
**PAOLI, PA 19301**
**610.651.0105**
**FAX 610.651.0106**
**EMAIL: Mark@Sophocleslaw.com**

**ATTORNEY FOR PLAINTIFF**
**DEPAUL WASHINGTON**

**JURY TRIAL DEMANDED**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEPAUL WASHINGTON,**<br>**PLAINTIFF,**<br><br>**v.**<br><br>**J.G. WENTWORTH COMPANY**<br>**J.G. WENTWORTH, LLC**<br>**AXAR CAPITAL MANAGEMENT, LP**<br>**DEFENDANTS.** | **:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:**<br>**:** | **CASE NO.:** |

---

## <u>CIVIL ACTION COMPLAINT</u>

Plaintiff, DePaul Washington is an adult individual who resides in New Jersey by his undersigned counsel, for this Civil Action Complaint against Defendants, J.G. Wentworth Company, J.G. Wentworth, LLC, and Axar Capital Management, LP as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities operating their principal business activities averred throughout this Complaint solely within this Court's District, in support of the claims and legal Counts against Defendants jointly and severally liable for the factual allegations as follows:

**I. INTRODUCTION**

1. The Defendants, JG Wentworth Company, LLC a portfolio company of Axar Capital Management, LP (an alternative asset management firm focused on stressed and distressed credit with app. $2.3 billion in assets under management) forming the national leader of direct-to-consumer specialty finance by providing cash liquidity to consumers by purchasing and buying structured settlement payment rights from tort victims who are entitled to receive structured settlement payments via court-approved transfer of annuity payments

2. The Defendants concentrate on stressed and distressed structured settlement payees/customers using nationwide television ad campaigns targeting distressed tort victims who use settlement funds structured in the form of annuity payments for their financial needs.

3. Defendants, as set forth more fully herein, used rampant, pervasive fraud as part of their sales practices to unsuspecting tort victims i.e., the Plaintiff using texts, emails, and calls to garner contracts for the transfer and sale of future structured settlement payment rights from customers.

4. The unsuspecting customers who are tort victims entitled to receive certain future settlement payments were regularly and routinely underpaid purchase prices by promising the customers certain specific payment amounts (as bonuses and cash advances marketed to unsuspecting consumers like Plaintiff as being made in addition to the contracted purchase prices) but by systemically failing to actually pay the customer the specific contracted purchase prices in stark derivation of the court orders that approved the specific sales as set forth more fully herein.

5. The Plaintiff, DePaul Washington is a tort victim who was targeted by Defendants for selling his payments and who at all times relevant and salient herein was made to believe (falsely) that he had to kickback funds to the sales representatives in order to garner certain

purchase prices, cash advances and cash bonuses until the transfer deals were consummated and Defendants refused to honor said sales promises.

## II. PARTIES

6. The Plaintiff as an adult individual resident of New Jersey

7. Defendants, owned, operated and managed their sales operations from their Chesterbrook headquarters where they are domiciled within this Federal District have clearly established diversity of citizenship and since the most or all of the significant aspects of the malfeasant fraudulent misconduct of Defendants occurred in the geographic region of this District Court, to wit, in Chesterbrook, Chester County in southeastern Pennsylvania such that this court has venue and jurisdiction to adjudicate this action.

8. DePaul Washington is an adult individual, tort victim and a consumer and "Payee" under the applicable structured settlement transfer acts as the party who sold certain structured settlement for all purposes herein residing in New Jersey at 7 Seminole Avenue, Teaneck, NJ who transacted business at all salient and relevant time periods with Defendants, their employees, assigns, subsidiaries, independent contractors, agents and servants acting with lawful authority on behalf of all Defendants who committed all acts set forth herein while in this District from their headquarters in Chesterbrook, PA and/or within this District.

9. Plaintiff, DePaul Washington is a former customer of Defendants who is a "consumer" and therefore afforded the protections afforded to "Consumers" under the Pennsylvania Unfair Trade Practices and Consumer Protection Act and who brings this case for adjudication in district court since the fraudulent malfeasance of the Defendants (see additional averments) is specific dispute from conduct that falls outside of the purported dispute resolution paradigm that Defendants implant in their sale agreements in order to avoid litigating in open court

and Defendants have acted expressly with the specific intent and actions that were deceptive and had a tendency to deceive such that Defendants are strictly liable to Plaintiff.

10. Plaintiff signed multiple purchase contracts with Defendants and sold various portions of various structured settlement payments that were approved whereby courts approved the transfer and sale of certain payments with specific alternative dispute resolution language that Defendants drafted, mandated and imposed upon their consumer customers without any right or option from said consumers to negotiate the salient language whereby Defendants abjectly seek to use this adhesion language to try to circumvent the rights of consumers to have claims like the instant one (despite occurring outside of the scope, terms and conditions of their salient contract) and upon information and belief the Defendants will immediately seek remand of the instant matter to binding arbitration even though Plaintiff avers and believes that the surreptitious malfeasant actions of Defendants (who are vicariously liable for the acts of their employees, subcontractors, servants, assigns) that are outside of the color, spirit, intent and practical implications of the salient sales contract (See Exhibit "A")

11. Defendants, JG Wentworth Company, doing business as JG Wentworth, LLC, as a subsidiary owned by Axar Capital Management, LP as corporations with a principal place of business at 1200 Morris Road, Chesterbrook PA, regularly conducting business, training, managing and overseeing their sales force including but not limited to Cliffton Satchell who was the primary sales person assigned to handle and sell to Plaintiff Washington in from their headquarters in this District in Southeastern Pennsylvania wherein the Defendants agreement to buy certain structured settlement payment rights dealt with the various transactions that Defendant did with Plaintiff such that the nefarious, untoward misconduct of Defendants' as set forth more fully herein expressly involved malfeasance by Defendants wholly outside of the scope, terms and

conditions of Exhibit "A" and similar language that Defendants will seek to keep out of the public sphere by trying to remand this dispute to private arbitration rendering the salient "dispute provisions" as unenforceable, unconscionable, void as against public policy, void due to fraud; voided by the fact that Plaintiff

12. Defendants use and operate various entities to conduct business such as the following:

- Axar Capital Management, LP as parent company for their owned subsidiary the J.G. Wentworth Company ("Wentworth"), formerly known as JGWPT, Inc. ("JGWPT"), is a Delaware corporation, with its principal place of business at 1200 Morris Road, Suite 320, Chesterbrook, Pennsylvania 19807.

- The J.G. Wentworth Company, LLC, formerly known as JGWPT Holdings, LLC ("JGWPT Holdings"), is a Delaware limited liability company, with its principal place of business at 1200 Morris Road, Suite 320, Chesterbrook, Pennsylvania 19807.

- The J.G. Wentworth Company business entities will be referred to collectively as JG Wentworth, which presents itself to the public using trademarked brand names including "JG Wentworth," "Peachtree," and "Olive Branch Funding."

- Peach Holdings, LLC d/b/a Peachtree Financial Solutions ("Peachtree") is a Delaware limited liability company, with its principal place of business located at the same Pennsylvania address as Defendant JG Wentworth.

- J.G. Wentworth S.S.C. Limited Partnership, a Nevada limited partnership with its principal place of business at the same Chesterbrook Pennsylvania address as JG Wentworth, is the record owner of the federal trademarks: "Peachtree Financial Solutions," "The JG Wentworth Company," and "JGWPT Holdings," and is wholly controlled by JG Wentworth.

- J.G. Wentworth, LLC is the predecessor of JGWPT Holdings Inc.

- Stone Street Financial, Inc.

- J.G. Wentworth, LLC
- Peachtree Financial Solutions
- Stone Street Capital, LLC
- Stone Street Originations, LLC
- Peachtree Life Settlements, LLC
- J.G. Wentworth Home Equity Services, LLC

- Orchard Acquisition Company, LLC
- J.G. Wentworth Structured Settlement Funding II, LLC
- J.G. Wentworth Management Company, LLC
- J.G. Wentworth Originations, LLC
- Green Apple Management Company, LLC
- J.G. Wentworth Receivables II, LLC
- Peachtree Originations, LLC
- Settlement Funding Management Company, LLC
- Peach Holdings, LLC
- Receivables Collections, LLC
- R.C. Henderson, LLC
- 321 Henderson Receivables Acquisition, LLC
- JGWPT Holdings, LLC, is the combined entity of J. G. Wentworth and Peachtree Financial Solutions.

## III. JURISDICTION AND VENUE

### A. JURISDICTION

13. This Court has jurisdiction over the claims between this New Jersey tort victim consumer customer of Defendants and the Defendants who performed all acts salient to the averments set forth herein from Chester County Pennsylvania.

14. The Plaintiff has lost $60,000 in kickbacks to the account representative for Defendants, in unfulfilled funding, ill-gotten funds not paid to Plaintiff from Defendants who have patently failed to honor proposed purchase prices for sold payments, misled Plaintiff by conflating the issues of cash advances and bonuses to confuse and patently misrepresent consumer protected facts for their pecuniary benefit and gain, such that Plaintiff is entitled to attorney fees and to triple/treble damages under the applicable Pennsylvania Unfair Trade Practices and Consumer Protection Act UTPCPL as set forth in Plaintiff's Complaint, and pursuant to 28 U.S.C. § 1332, and grants federal court jurisdiction in all civil actions between citizens of different states and between a citizen of a state and a subject of a foreign state if the amount in controversy exceeds $75,000

15. The Court has specific personal jurisdiction over Defendant because it directed its conduct from Southeastern Pennsylvania by calling individuals from their headquarters in Wayne/Chesterbrook (Chester County) Pennsylvania, including those, like Plaintiff, from this District, specifically, Wayne/Chesterbrook, Chester County, Pennsylvania 19087.

**B. VENUE**

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal fraudulent misconduct of rampantly promising cash advances and bonuses that should have been paid in addition to contract purchase prices but were systemically not adhered to and by surreptitiously claiming (without being truthful or factually accurate that the Plaintiff as a customer of Defendant had to pay the Defendant sales representative kickbacks or sums of money allegedly and purportedly needed for Plaintiff to obtain certain bonuses and cash advances) i.e. the allegations at issue—were trained, directed, performed, derived, contrived, managed and at all times relevant and salient herein universally occurred from the Chesterbrook headquarters of Defendants and at all time relevant occurred only within and  from this District.

17. Defendants by and through their employees and independent contractors fleeced Plaintiff DePaul Washington into doing various deals to sell or otherwise transfer specific settlement payments for various accompanying purchase prices and forced Plaintiff to surreptitiously sign contracts for the sale or transfer of certain structured settlement payment rights with onerous, adhesion language (not negotiated by and between the parties) drafted solely by Defendants for their own benefit seeking to subject this dispute to binding arbitration agreement. See Exhibit "B" example of subject binding arbitration language.

18. The Defendants use of the binding arbitration language is unconscionable in regard to the application of this provision with the facts of this case.

19. Plaintiff and Defendant did not fairly negotiate the specific terms of the various contracts that Plaintiff signed.

20. It is anathema to any simple or basic notion of fairness to deduce that the utilization of binding arbitration language in this consumer contract was included to shield and hide from the public court system and more importantly to subject the malfeasant/misfeasance misconduct of Defendants illegal fake kickback scheme to truly reward and condone systemic illegal misconduct solely to the detriment of a consumer like Plaintiff.

21. The scheme by Defendants absolutely occurred and is supported by the memorialized emails and payments FROM (emphasis added) Plaintiff to Defendant See Exhibit "C" proofs of payments from Washington to Defendant sales representative Cliffton Satchell.

22. In order to consummate sales and to keep Plaintiff's sales process about timing and funding of various transactions, provided Plaintiff with bonuses to increase contracted purchase prices to Plaintiff in order to compete with on-going competition in order to offer more money for the same purchased settlement payments beyond the amounts contracted for wherein the Plaintiff would receive and keep bonus sums for the same assigned payments.

23. In order to assuage the concerns of Plaintiff about funding delays for various transactions, provided Plaintiff with cash advances to Plaintiff in order to compete with on-going competition in order to offer money inducement for the same purchased settlement payments beyond the amounts contracted for wherein the Plaintiff would repay advances after deals were closed and funded.

24. Defendants conflated and commingled the use, abuse and misuse of cash advances and bonus sums in the sales process with the Plaintiff in order to falsely reconcile actually owed bonuses (not reimbursable to the Defendants) versus cash advances (ostensibly repayable to the Defendants outside of the purchase price).

25. All of the sales processes, confusion, representations, misrepresentations and false claims made by Defendants to the Plaintiff occurred from the Chesterbrook headquarters of Defendants parent company i.e. in the Eastern District of Pennsylvania for the purposes of this Complaint where the Defendants at all times relevant and salient herein tightly and closely monitored every facet of the sales process of the instant case and as employer of Cliffton Satchell for decades is vicariously liable for the misconduct of their employee.

26. Thus, venue is appropriate in this District since the "substantial part of the events" standard in 28 U.S.C. 1391(a) (2) is satisfied.

## IV. FACTS COMMON TO ALL COUNTS

27. Plaintiff incorporates by reference the previously set forth averments in this Complaint as if fully set forth at length herein.

28. Plaintiff as a tort victim was injured as a young person and garnered a structured settlement that he has sold in varying amounts at various times to, inter alia, various factor companies and primarily Defendants as it relates to this cause of action.

29. Specifically, Plaintiff contracted with Defendants to sell certain payments, in 2024 in in Bergen County, NJ in order to grow his retail store and more recently to try to open a restaurant both facts that the Defendants knew and used as the predicate to garner additional transfer/sales of Plaintiff's settlement rights while failing to disclose to the Court (State Court in

Bergen County) the actual amounts paid (or more aptly stated not paid) to Plaintiff given the kickback scheme that sales representatives used to falsely compel Plaintiff to pay.

See Exhibit “D” (New Jersey transfers)

30. Plaintiff was further victimized by the illegal, unauthorized fraudulent misconduct of Defendants, their employees who by virtue of their relationship with Defendants are vicariously liable to Plaintiff for lying to Plaintiff when fleecing him out of the purchase prices for the sale of various settlement payments predicated upon abject falsehoods and lies.

31. In contracting with the Defendants, the Plaintiff as a consumer was wholly manipulated and given fake information to induce the process of stealing money from unsuspecting Plaintiff and other consumers unfamiliar with the system of fraud and lies claiming that Defendants would pay Plaintiff (et al consumers) higher purchase prices for their structured settlement payments than the amounts actually paid.

32. Defendants used fraudulent misrepresentations regarding the characterization of cash advances as bonuses to induce the Plaintiff to do more transactions.

33. Defendants conflating the cash advances versus purchase price bonuses was a systemic, manipulation by Defendants to lie to tort victims like Plaintiff to make the Plaintiff think that he was being given extra sums of money for free in exchange for sending sales representatives like Satchell contemporaneous kickbacks in exchange for the sales representative claiming (falsely) that the tort victims like Plaintiff were required to kickback Cash App payments to Satchell in order to garner these illusory higher purchase prices that never occurred.

34. Plaintiff in contracting with Defendants was repeatedly told that in order to garner bonus money and/or cash advance money that he would have to kickback sums to the sales representative Clifton Satchell as decades long veteran of the Defendants sales floor known as a

prolific sales person who regularly bought structured settlement payments from unsuspecting consumers like Plaintiff using fraud to personally enrich himself and the Defendants through a pattern of lies and misrepresentations concerning the timing and amounts of bonuses and cash advances all of the falsely telling consumers like Plaintiff that they were required to send Satchell money when in fact they were not required to do this.

35. Defendants used patently false and misleading sales tactic to induce Plaintiff to sell payments, to garner monetary cash advances and purchase price bonuses predicated upon the falsely purported "requirement" (as falsely misrepresented to Plaintiff) that Plaintiff was "obligated" to payback to Defendants and their sales representatives with commensurate monetary renumeration as a condition precedent to Plaintiff's ability to garner purchase prices, cash bonuses and cash advances (sums paid to the Plaintiff as Payee under the salient structured settlement transfer Acts of Pennsylvania and New Jersey).

36. Plaintiff was not legally "obligated" to pay funds paid back to the sales representative (as contemporaneously made cash payments **FROM** (emphasis added) the Plaintiff to the sales representative(s) of Defendants.

37. The Defendants are subject to liability for aiding and abetting the tortious misconduct as set forth throughout this complaint upon proof of the following elements:

(a) a tort was committed against the Plaintiff by another party;

(b) the Defendants knew that the other party's conduct was wrongful;

(c) the Defendants knowingly and substantially assisted in the commission or concealment of the tort; and

(d) the Plaintiff suffered economic loss as a result.

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 (AM. L. INST. 2020).

38. In *Marion v. Bryn Mawr Trust Co.*, the Supreme Court of Pennsylvania unanimously held that aiding and abetting fraud is a cognizable claim under state law since the ruling expands the potential liability of secondary actors who provide substantial assistance or encouragement to fraudulent activities, such as bankers, lawyers, and accountants.

39. To prove such a claim, the aider/abettor must have had actual knowledge of the fraud, and it is axiomatic that Defendants augmented their sales production, while surreptitiously turning a proverbial blind eye to having their customers pay a portion of their sales force compensation by this kickback scheme.

40. Defendants knew or should have known that their sales force used this illegal kickback scheme since Defendants micro-manage every facet of the highly competitive structured settlement sales floor by monitoring every email, text message, personal and work-related telephone, and similar communications such that Defendants knew and could reasonably foresee the malfeasance set forth fully herein this Complaint.

41. Because the process for the sale or transfer of structured settlement payment rights takes weeks to complete and the value of a contract to Defendants can be 6 or 7 figures in profit, there is a time delay between contracting and best-interest of Payee’s court-hearing to validate this contract, there is a discernible need by Defendants to continually micro-manage sales people by locking down the sales process for Defendants who due to attrition, competition, active consumer/customer shopping through the www through the date of the hearings, the Defendants sales people like Satchell have every facet of their sales monitored and supervised by Defendants who reasonably foresaw the malfeasance set forth herein.

42. Regarding the scienter required for aiding and abetting fraud, the panel opined Grimm v. Grimm, 149 A.3d 77 (Pa. Super. 2016), "held that § 876(b) could apply where the defendant knew of or could reasonably foresee the underlying bad actor's misdeed." Id. at 690.

43. Upon information and belief, the Defendants will purposefully claim ignorance of the clear kickback scheme exhibited in this instant case as turning a proverbial blind eye to a scheme that secrets away purchase prices of Payees like Plaintiff herein while allowing sales representatives to be compensated for extra funds by unsuspecting customers is akin to intentional ignorance.

44. In *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.,* 107 A.3d 114 (Pa. Super. 2014) the Court found that "relied on the defendant's 'intentional ignorance' in concluding that the defendant knew or should have known it was participating in tortious conduct." Id. at 691.

45. Pursuant to *Grimm*, *HRANEC*, and *Resolution Trust*, the panel concluded, "a defendant's actual knowledge of the underlying tort is not necessary to sustain a cause of action" for aiding and abetting fraud. Id. "Rather," the panel determined, "if the defendant knew or should have known of the underlying bad actor's misdeeds, but instead exhibited intentional ignorance, . . . the knowledge element of [the tort] is satisfied." Id.

46. Pennsylvania Supreme Court's decision in *Gregg, et al. v. Ameriprise Fin., Inc., et al.* holds vendors that provide goods and services to consumers in the Commonwealth of Pennsylvania strictly liable for fraudulent or deceitful conduct under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (PUTPCPL).

47. As a result, a vendor's state of mind—and that of its employees—when engaging consumers is irrelevant.

48. The imposition of strict liability requires vendors to exercise the utmost care in their dealings with Pennsylvania consumers, particularly since a successful plaintiff can recover attorneys' fees and treble damages under the PUTPCPL.

49. On February 17, 2021, the Supreme Court of Pennsylvania decision in *Gregg v. Ameriprise Financial* answers the question of whether Pennsylvania's primary consumer protection statute (PUTPCPL) creates strict liability for defendants in consumer transactions, and the answer is "yes."

50. Applying the salient law to the facts of this case, the strict liability of Defendants to Plaintiff in this action is absolute and clear.

51. The Defendants acted grossly to deceive the Plaintiff by not paying him the entirety of his court ordered purchase price since he was surreptitiously required to pay kickbacks to the sales representatives without disclosing this to the Courts who approved their transfer applications and in direct circumvention of the applicable Transfer statutes.

52. These Statutes require full and honest disclosure of the net purchase price to the Payee from the Defendants and every single transaction that Defendants entered with Plaintiff contains material deviations of this statutory obligation.

53. The repeated acts of wanton deception by Defendants involved blatantly lying to the Payee about the net purchase prices that the Defendants claimed they were paying the Payee per the Court ordered transactions were mispresented to the Courts.

54. The abject lies and mistruths by Defendants who surreptitiously deceived the Plaintiff into believing he was getting paid certain amounts when in fact he was only lied to and told that he had top payback kickbacks to the sales representatives of the Defendants rendering the Defendants vicariously liable for the abject stealing of the Payee's funds.

55. The Defendants greatly benefitted by knowing about this illegal practice as it was a way to reward their sales representatives financially by having them earn bonuses paid by unsuspecting customers like Plaintiff.

56. Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "CPL"), 73 P.S. §§ 201-1, et seq., was first enacted in December 1968 and prohibits the use of deceptive or fraudulent statements or conduct "trade" or "commerce."

57. The CPL includes twenty (20) enumerated categories or examples of prohibited conduct. They are:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(iv) Using deceptive representations or designations of geographic origin in connection with goods or services;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he does not have;

(vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(viii) Disparaging the goods, services, or business of another by false or misleading representation of fact;

(ix) Advertising goods or services with intent not to sell them as advertised;

(x) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

See generally 73 P.S. § 201-2.

58. Defendants purposefully acted in violation of the Act specifically (including but not limited to) the following:

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(ix) Advertising goods or services with intent not to sell them as advertised;

(x) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(xv) Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;

59. The Pennsylvania Supreme Court determined that "deceptive conduct" had "acquired a peculiar and appropriate meaning prior to the 1996 amendment." The Supreme Court opined that the CPL… allow for liability for deceptive conduct without proof of negligence. See *Gregg v. Ameriprise Fin., Inc.*, No. 29 WAP 2019, 2021 Pa. LEXIS 608

60. The Supreme Court then drove out any lingering questions about what standard of liability this represented. "[T]he amended language places the duty of compliance with the CPL on commercial vendors, without regard to their intent. Without a state of mind requirement, the amended catch-all provision fairly may be characterized as a strict liability offense." See *Gregg v. Ameriprise Fin., Inc.,* No. 29 WAP 2019, 2021 Pa. LEXIS 608

61. Defendants frequently confused unsuspecting consumer like Plaintiff by pre-funding sums of money before the state Court judges issued orders of court approving petitions by conflating cash advances (i.e. amounts of money pre-paid top Payees prior to approval hearings which are plainly de facto statutorily deficient since these funds were paid absent statutory approval) along with bonuses (amounts paid by Defendants in addition to the amounts statutorily disclosed to Payee and Courts as part of the related state court approvals).

62. Defendants by purposefully conflating these payments paid to Payee consumers outside of the statutory requirements inherent with each state's statute; the Defendants surreptitiously failed to properly account for the amounts actually paid to consumers and this willful conflation of these payments made in juxtaposition with the improper sales practices of demanding that consumers payback funds to salespersons for certain price increases, cash advances and cash bonuses (sums paid by Defendants to Payee consumers on top of or in addition to disclosed purchase prices).

63. Defendants as the national leader in the purchase of structured settlement payment rights has consummated thousands of structured settlement transfers that are patently inaccurate, misleading and devoid of the reality of the cash payments made outside of the statutory requirements, pre-court approval of transfers, intended to confuse consumers and done solely for the benefit of the Defendants who held a superior bargaining position over their unsuspecting consumer customers.

64. The scope of the "Arbitration Provisions" drafted alone by the Defendants seek to impose binding the Parties to arbitrate claims that are squarely outside of the terms of the contract given that the allegations of Plaintiff in this case are related to facts that transpired outside of contract; by a salesperson who was being closely monitored by Defendants but who surreptitiously acted to conceal his misconduct by using his work and job to foster the relationship while using personal cellphone and emails to secretly engage in this kickback scheme.

65. Either Defendants knew about the misconduct of Satchell and willfully ignored this misconduct or recklessly allowed the misconduct to exist; either of these actions govern conduct that is outside of statutory paradigm that each state for approving structured settlement transfers and is outside of the contract thus not subject to these arbitration provisions.

## **LEGAL CAUSES OF ACTION**

### **COUNT I**
### **PLAINTIFF v. DEFENDANTS**
### **STRICT LIABILITY FOR VIOLATIONS UNDER PENNSYLVANIA 3 P.S. § 201-2. UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**

66. Plaintiff incorporates by reference as if fully set forth herein the prior and subsequent averments contained herein.

67. Defendants benefitted from the highly deceptive, extra-contractual misconduct described throughout this Complaint and are liable to Plaintiff for wantonly deceiving Plaintiff

into paying the salespersons money for the Defendants to pay Plaintiff (bonuses and/or cash advances) for the sale of structured settlement payment rights. "…[C]onduct that is likely to deceive a consumer acting reasonably under similar circumstances."

68. The misconduct of the Defendants was effectuated outside of contract between the Parties and intended to deceive the Plaintiff by conflating the contract and contract-related issues relative to the statutory transfer of structured settlement payment rights.

69. In Pennsylvania, the Supreme Court concluded, "[t[he plain language of the current statute imposes liability on commercial vendors who engage in conduct that has the potential to deceive, and which creates a likelihood of confusion or misunderstanding."

70. The net result of the systemic misconduct of the Defendants upon this Plaintiff is that any/all associated Orders of Court confirming and approving the sale of structured settlement payment rights of DePaul Washington to Defendants were patently inaccurate, misleading, and not reflective of the true and accurate monetary conditions represented in said transfers.

71. Upon information and belief, the Defendants knew and have known about this insidiously wanton practice (wherein, inter alia, the Defendants were able to secret extra commission-like pecuniary benefits for their sales forces from of their unsuspecting consumer, tort victim customers).

72. The approved Transfers in Bergen County NJ set forth in the attached (See Exhibit "D") should be vacated or reviewed by this Court to compel the disgorgement of ill-gotten pecuniary gains from Defendants to Plaintiff who lost actual and consequential damages as a direct and proximate result of not receiving the disclosed funding amounts by Defendants including but limited to losing a restaurant investment that required these additional funds to open but that were lost by virtue of the malfeasance of Defendants.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Award damages in an amount to be determined at trial;

b. Award statutory treble and punitive damages as provided under the UTPCPL;

c. Grant legal fees and expenses and any other relief the Court deems just and proper.

**COUNT II**
**PLAINTIFF v. DEFENDANTS**
**AIDING AND ABETTING FRAUD**

73 Plaintiff incorporates by reference as if fully set forth herein the prior and subsequent averments contained herein.

74. The defendants are subject to liability for aiding and abetting a tort upon proof of the following elements:

(a) a tort was committed against the Plaintiff by another party;

(b) the Defendant knew that the other party's conduct was wrongful;

(c) the Defendant knowingly and substantially assisted in the commission or concealment of the tort; and

(d) the plaintiff suffered economic loss as a result.

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 (AM. L. INST. 2020).

75. These defendants are subject to liability for aiding and abetting a tort upon proof of the following elements:

(a) a tort was committed against the plaintiff by another party in this case their sales persons

(b) the Defendant knew that the other party's conduct was wrongful since it is patently unfair in that requiring the Payee/consumer to payback sums to the sales persons as a falsely conceived "requirement" for proceeding with payment of purchase prices, cash advances and bonuses to Payees is systemic, de facto, gross misrepresentation of the actual and true economic components

inherent to each sales contract wherein the Defendants purchased structured settlement payment rights.

(c) the Defendants knowingly and substantially assisted in the commission or concealment of the tort by failing to curb, end, prohibit or otherwise manage this wantonly deceptive, grossly improper process wherein the Defendants benefitted by having their consumer customers actually pay their sales persons unwittingly but at great financial benefit to Defendants while surreptitiously taking funds from unsuspecting consumers nationally for years and involving hundreds if not thousands of applicable structured settlement transfers heretofore approved by unsuspecting judges who signed Orders approving these transfers throughout this country with grossly inaccurate and misleading purchase payment information that was willfully and systemically withheld by design to these state court judges who were charged with determining if these unsuspecting tort victim consumers predicated upon, inter alia, the financial components of said transfers believing that Payees were being paid certain purchase prices when in fact they were paid hundreds and thousands of dollars less since the consumers were told that they needed to payback sums to Defendant salespeople.

(d) the plaintiff suffered economic loss as a result since they were induced to make payments back to the Defendants that were not disclosed to the state Courts.

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 (AM. L. INST. 2020).

76. Defendants are liable to Plaintiff according to this malfeasant misconduct as it violates the law. As a direct and proximate result of Defendant’s conduct, Plaintiff has incurred damages, including damages, such as lost money, incurring extra fees and costs, losing business opportunity including but not limited to losing $70,000 in lost opportunity regarding a lost business that was relying upon the Defendants funding promises that went unfulfilled.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Award damages in an amount to be determined at trial;

b. Award statutory treble and punitive damages as provided under the UTPCPL;

c. Grant legal fees and expenses and any other relief the Court deems just and proper.

An award to Plaintiff of damages, as allowed by law; and Orders granting such other and further relief as the Court deems necessary, just, and proper.

**COUNT III**
**PLAINTIFF v. DEFENDANTS**
**CIVIL FRAUD**
**INTENTIONAL MISREPRESENTATION**

77. Plaintiff incorporates by reference the prior averments as if fully set forth herein.

78. Defendants fraudulently mispresented the most significant material fact regarding their purchase of structured settlement payment rights when they wantonly lied about the actual purchase price (net amount after dubious "deductions" for illegal kickbacks to the sales representative, charges for bonuses and cash advances that were misrepresented as not subject to repayment) without deducting the sums that Plaintiff had to pay to the Defendant sales representatives to garner sale prices.

79. The Defendants will seek to remand this litigation to private arbitration despite the clearly unconscionable nature of their kickback scheme being full extricated from the Agreement and from the facts of this cause of action being outside of the confining arbitration provisions.

80. If the Court remands this cause of action to binding arbitration; said action will be tantamount to condoning the unconscionable misconduct averred by Plaintiff against Defendants as being subject to the "arbitration provisions," thus by unfairly enlarging the spectrum of issues

that are subject to arbitration to ostensibly any misconduct to the benefit of Defendants and contrary to right of Plaintiff to have a jury redress the claims.

81. Defendants intentionally misrepresented Plaintiff that he had to pay the sales representatives kickbacks in order to get certain purchase prices for the sale of future payment rights, cash advances, bonuses, and secreted away certain sums of money allegedly needed for Plaintiff to pay to Defendant's sales representative additional kickbacks needed to obtain cash advances and bonuses.

82. The intentional misrepresentation occurred in the instant case when a party to a contract knowingly makes an untrue statement of fact which induces the other party to enter into that contract the way that the Defendants misrepresented that Washington had to pay Satchell et al Defendant employees kickbacks.

83. The fraudulent misrepresentation from Defendants evidences an intention by the maker that the recipient will thereby be induced to act, justifiable reliance by the recipient upon the misrepresentation, and damage to the recipient as the proximate result.

84. In *Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. 90, 464 A.2d 1243, 1251-1252 (Pa. 1983), our Supreme Court provided an expansive definition of what is "fraud in general" as follows:

85 Fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture and plainly the illegal payment of kickbacks from the Plaintiff as customer to the Defendants was never required as Defendants deceptively indicated to Plaintiff.

86. It has been said that fraud may induce a person to assent to something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is.

87. To be actionable, misrepresentation need not be in the form of a positive assertion. It is any artifice by which a person is deceived to his disadvantage.

88. It may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment.

89. It is well settled that fraud is proved when it is shown that the false representation was made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false.

90. It has also been established that "the deliberate nondisclosure of a material fact amounts to a culpable misrepresentation no less than does an intentional affirmation of a material falsity." *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 450-52, 51 A.2d 759, 764 (1947).

91. Yet, a misrepresentation innocently made is also actionable if it relates to a matter material to the transaction involved; while if the misrepresentation is made knowingly or involves a non-privileged failure to disclose, materiality is not a requisite to the action.

92. The elements of fraud are as follows: "'there must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.'" "[I]f [a] misrepresentation is knowingly made or involves a non-privileged failure to disclose; materiality is not a requisite to the action." *Shane v. Hoffmann,*

supra 227 Pa. Super. at 182, 324 A.2d at 536, citing *De Joseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644 (1958).

93. A misrepresentation is material when it is of such a character that if it had not been made, the transaction would not have been entered into.

94. While *Delahanty* set forth this expansive definition of fraud, in *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 560 (Pa. 1999), our Supreme Court refined that definition by explaining that "fraud" can be made out under different types of misrepresentation but for the purposes of this Complaint intentional fraudulent misrepresentation occurred

95. Intentional or fraudulent misrepresentation occurs when a party to a contract knowingly makes an untrue statement of fact which induces the other party to enter that contract. ***Id.*** at 560; *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994), *citing*, *Restatement (Second) of Torts § 525* (1977).

96. Plaintiff avers and believes that the Defendants intentionally misrepresented the untrue facts of conflating bonus sums with cash advances and by falsely "requiring" Plaintiff to kickback funds to the sales representative in order to garner cash advances and bonuses before refusing to actually fund the Payee with the disclosed payment amounts abjectly deviating from the salient statutory provisions of the Structured Settlement Transfer Acts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a. Award damages in an amount to be determined at trial;

b. Grant legal fees and expenses and any other relief the Court deems just and proper.

c. An award to Plaintiff of damages, as allowed by law; and Orders granting such other and further relief as the Court deems necessary, just, and proper.

**COUNT IV**
**PLAINTIFF v. DEFENDANTS**
**NEGLIGENCE**

97. The Plaintiff incorporates by reference the averments and allegations set forth in this Complaint as if fully incorporated herein.

98. The Plaintiff as a customer of Defendants is a business invitee of Defendants who is owed a duty of care.

99. Defendants trained, managed, supervised and oversaw every step of the sales process between the Parties.

100. Defendants owed Plaintiff a duty of care to ensure that their sales force would act fairly and reasonable in communicating and dealing with their customers.

101. Defendants breached this duty of care by failing to manage, supervise, oversee, train and monitor to ensure that sales persons like Satchell would act honestly, in compliance with relevant state statutory acts governing the transfer of structured settlement payment rights, lawfully, in good faith and without taking actions never contemplated by the transfer agreement, by failing to punish or stop malfeasant misconduct like the kickback scheme set forth herein, to otherwise ensure that they would not allow misconduct to be perpetuated as set forth herein.

102. The Defendants breached this duty of care by wantonly failing to supervise or manage the extra-contractual misconduct of the Defendants' salespersons as exemplified by the misconduct that occurred here.

103. As a direct and proximate result of the breach of the duty of care owed by Defendants to the Plaintiff, the Plaintiff has lost thousands of dollars in actual and proximate damages and losses in excess of $75,000 that occurred as a direct and proximate result of the negligent actions of Defendants.

104. Defendants are liable to Plaintiff for actual damages directly related to their failure to implement a system of checks and balances, failure by design or by failures to supervise, train, manage, oversee, and monitor the work production and actions of their employees who upon information and belief fail to adhere to the law regarding the transfer of structured settlement payment acts governing the practice and procedures for promulgating court-approved transfers of qualified structured settlement transfers.

105. Defendants by virtue of their failure to supervise and manage their employees renders them vicariously liable for the requisite actual damages proximately and directly resulting from these abject failures including but not limited losing ill-gotten funds misappropriated by Defendants that cost Plaintiff to lose investment in a restaurant in Bergen County NJ since funds owed to Plaintiff were not paid to Plaintiff causing him to default and lose his investment.

106. Defendants upon information and belief by the malfeasant acts and or omissions as set forth more fully as if incorporated fully herein have systemically violated numerous state statutes governing the sale and transfer of structured settlement payment rights by failing to pay Payees like Plaintiff the disclosed purchase prices for the specific purchases of Payee's settlement payment rights in direct contravention of the specific court-orders approving said transfers like the transfers approved in Bergen County State Court in New Jersey regarding the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

a. Award damages in an amount to be determined at trial;

b. Grant legal fees and expenses and any other relief the Court deems just and proper.

c. An award to Plaintiff of damages, as allowed by law; and Orders granting such other and further relief as the Court deems necessary, just, and proper.

**DEMAND FOR JURY**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

MARK THOMAS SOPHOCLES, LLC

By: ______________________________
Mark T. Sophocles, Esquire
Pennsylvania Supreme Court ID 74998
21 Industrial Blvd., Suite 201
Paoli, Pa 19301
610.651.0105
Fax 610.651.0106
Email: Mark@Sophocleslaw.com

**VERIFICATION**

I, Depaul Washington, have read the foregoing Civil Complaint and hereby aver that the statements contained therein are true and correct to the best of my knowledge, information, and belief.

This Verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to the unsworn falsification to authorities.

DEPAUL WASHINGTON